# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

ANTHONY J. WILLIAMS,      )
                                  )
        **Plaintiff,**        )        **Case No. 3:07-0294**
                                  )        **Judge Trauger**
**v.**                          )
                                  )
**BEST BUY STORES, L.P.,**     )
                                  )
        **Defendant.**     )

## MEMORANDUM

The defendant has filed a Motion for Summary Judgment (Docket No. 32), to which the plaintiff has responded (Docket No. 37), and the defendant has replied (Docket No. 40). For the reasons discussed herein, the defendant's motion will be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Anthony J. Williams, an African-American man, was employed by defendant Best Buy as a Digital Technology Zone Manager ("DTZM") from October 17, 2005 until approximately March or April, 2006, when Best Buy eliminated the DTZM position pursuant to a reorganization.[1] As a DTZM, the plaintiff was responsible for sales of digital cameras and

---

[1]Unless otherwise noted, the facts are drawn from the plaintiff's Complaint (Docket No. 1), the plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Docket No. 39), the plaintiff's Additional Statement of Material Facts (Docket No. 38), and the plaintiff's Response in Opposition to Motion for Summary Judgment (Docket No. 37), in accordance with the court's task in analyzing a motion for summary judgment to determine whether the "nonmoving party [has] come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis added)); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. App., p. 626 (the purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial"). Where the plaintiff's proof does not adequately rebut the proof provided by the

Case 3:07-cv-00294   Document 44   Filed 03/19/08   Page 1 of 21 PageID #: 524

computer products and for the "Geek Squad," a computer support service. In addition, the plaintiff was responsible for hiring and training a staff of approximately fifteen employees. The plaintiff worked at the defendant's Mt. Juliet store where Amber Cales, a Caucasian woman, who had hired the plaintiff, was the General Manager. Ms. Cales also hired Matthew Rice, a Caucasian man, in the Fall of 2005, to work as a Home Essential Zone Manager ("HEZM") at the Mt. Juliet store. As a HEZM, Mr. Rice was responsible for sales in the areas of the store devoted to audio, home audio, "car fi", and appliances.

In February 2006, Ms. Cales was informed that there would be a nationwide reorganization of Best Buy's retail stores. Pursuant to this reorganization, both the DTZM and HEZM positions would be eliminated, along with several other positions. In addition, some new positions were created, such as Customer Experience Manager and Sales Services Manager. The Mt. Juliet Store, due to its small amount of revenue in comparison to other stores, was to be allocated only one Customer Experience Manager. As DTZM and HEZM, respectively, both Mr. Williams and Mr. Rice were to be considered for this position.

The Customer Experience Manager was designated as responsible for implementing "segment strategies" to "support a portfolio of customers" within a store. In so doing, the Customer Experience Manager was to "utilize profit and loss reports, scorecards, and customer segment data." There appear to have been two different job descriptions for this position, one of which required a bachelor's degree, and one of which merely preferred a bachelor's degree. (*See*

---

defendant, the court so notes this deficiency by adopting the defendant's fact and citing to the defendant's pleading, affidavit, or other document. However, where the plaintiff has admitted a fact alleged by the defendant, the court merely draws this fact from the plaintiff's admission, and does not cite to the defendant's pleading, affidavit, or other document.

Docket No. 41 at p. 12)  The defendant denies that there were two different job descriptions. However, the defendant admits that it submitted a job description to the EEOC that required a four-year bachelor degree but that "the CEM job description that was actually used in the hiring process did not require a college degree."  (Docket No. 41 at 13)  That distinction is relevant to this case because, while Mr. Williams had a bachelor's degree, Mr. Rice did not.

The plaintiff alleges that he was originally told by Ms. Cales that he would need to interview for the Customer Experience Manager position (and for the Sales Service Manager position, for which he later applied), but the defendant disputes this fact.  According to the Leader's Guide, a brochure created by the defendant in introducing the new positions, the incumbents in the DTZM and HEZM positions were merely to be "assessed" in determining who would become the Customer Experience Manager.  (Docket No. 41 at 2-3)  Regardless, the plaintiff was not permitted to interview for the Customer Experience Manager position; instead, Mr. Rice was introduced as the new Customer Experience Manager at the Mt. Juliet store on the plaintiff's day off.

In deciding between Mr. Williams and Mr. Rice, Ms. Cales consulted a "Customer Experience Manager (CEM) Evaluation Sheet."  This sheet included six areas for assessment: (1) Culture and Management; (2) Employee Experience; (3) Operational Efficiency; (4) Grow the Business; (5) Superior Customer Service, and (6) Documented Performance Problems. However, the sixth category was not filled in for either applicant.  Out of the first five areas, Mr. Rice was given a higher score, based on his perceived advantages in area two, Employee Experience, and area five, Superior Customer Service.

That the sixth area, Documented Performance Problems, was not addressed for either

3

employee is relevant because Mr. Rice had received several "performance counseling records" for "unacceptable performance." These records document that Mr. Rice was tardy, left the store early, and closed the store early on several occasions. The last of these records was issued less than six months before the decision was made to hire Mr. Rice as Customer Experience Manager. During the course of his employment, Mr. Williams did not receive any "performance counseling records" or any other written disciplinary notice.

Ms. Cales explained her decision to hire Mr. Rice and not Mr. Williams as Customer Experience Manager at a meeting with other General Managers from stores in the Nashville district. At the meeting, Ms. Cales stated that she had considered feedback regarding Mr. Williams' training at other stores, his work assisting with the Mt. Juliet store opening, and his work at a job fair. Ms. Cales alleges that she had received feedback that Mr. Williams was withdrawn and not assertive and that, at the job fair, he played video games excessively. Mr. Williams denies that he was withdrawn or unassertive and alleges that he only played video games when it was appropriate to do so. In addition, Ms. Cales noted that Mr. Rice was more outgoing at the job fair and that he had created a "chalk talk" meetings schedule with employees working in his designated area.

When Ms. Cales informed Mr. Williams that he would not be employed as Customer Experience Manager at the Mt. Juliet store, she also told him that, if he was unable to secure another position at Best Buy by May 5, 2006, his employment with Best Buy would end. Accordingly, Mr. Williams applied for the Customer Experience Manager and the Sales Services Manager positions at the Cool Springs, Tennessee store. The Sales Services Manager was to be "responsible for protecting and delivering the field service brand by overseeing Geek Squad

4

solutions, Installation . . . , delivery, third party relationships, repair and other new business that requires the implementation of field services." (Docket No. 39 at 12-13). Mr. Williams was not selected for either position. Larrick Doak, an African-American male, was selected for the Customer Experience Manager position at the Cool Springs store, and Michael Bishop, a Caucasian male, was selected for the Sales Services Manager position. The plaintiff has admitted that Mr. Bishop was selected because of his prior management experience at the Cool Springs Store, a significantly larger store in volume than the Mt. Juliet store, and because of his experience with the Geek Squad. (Docket No. 39 at 13)

Finally, Mr. Williams applied for the Sales Services Manager position at the Mt. Juliet store. Mr. Williams was not selected; instead, the defendant hired Philip Margarone, a Caucasian male. The plaintiff has admitted that Mr. Margarone was selected because of his previous management experience, including his experience managing Home Theater installation. (Docket No. 39 at 14)

On December 18, 2006, Mr. Williams received a notice of right to sue from the Equal Employment Opportunity Commission ("EEOC"). (Docket No. 1, Ex. 1). On March 14, 2007, Mr. Williams filed this action, alleging that his termination, after having been passed over for the Customer Experience Manager and Store Service Manager positions, constituted unlawful discrimination on the basis of race, in violation of Title VII. (Docket No. 1) On December 21, 2007, the defendant moved for summary judgment. (Docket No. 25)

## ANALYSIS

### I.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted

5

if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must demonstrate the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). Our function "is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case—provided that the nonmoving party bears the burden for that element—the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To avoid summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). And we must keep in mind that "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir.

6

2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. Finally, "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49). With this standard in mind, the court turns to an analysis of the plaintiff's claims.

## II.      The Plaintiff's Title VII Claim

The plaintiff alleges that the defendant impermissibly discriminated against him on the basis of race, in violation of Title VII, by failing to hire him into a newly created position after his prior-held position was eliminated. Title VII cases follow the burden-shifting structure set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). After the plaintiff demonstrates a *prima facie* case, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant is able to make that showing, the burden shifts back to the plaintiff to demonstrate that the reason offered by the defendant was not its true motivation but, rather, a pretext for discrimination. *Id.*; *see also Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004); *Penny v. UPS*, 128 F.3d 408, 417 (6th Cir. 1997).

### A.      The Plaintiff's *Prima Facie* Case

To establish a *prima facie* case for a discriminatory employment action, the plaintiff must show the following: (1) that he belongs to a protected class, (2) that he performed his job satisfactorily, (3) that he suffered an adverse employment action, and (4) that a comparable non-

7

protected person was treated better. *McDonnell Douglas*, 411 U.S. at 802, *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582-83 (6th Cir. 1992).

The defendant does not dispute that the plaintiff has shown the first three requirements, but does allege that the plaintiff has failed to meet the fourth requirement, whether a non-protected person was treated better. The Sixth Circuit has held that a "comparable non-protected person" (also referred to as a "similarly situated non-protected employee," *Newman v. Federal Exp. Corp.*, 266 F.3d 401, 406 (6th Cir. 2001), must be "nearly identical" to the plaintiff with regard to all relevant aspects of his or her employment situation. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). *See also Mitchell v. Toledo Hosp.*, 964 F. 2d 577, 582 (6th Cir. 1992) (holding that, in the disciplinary context, the colleague and the plaintiff "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"). The plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated' . . . ; however, the plaintiff and the comparable [employee] must be similar in all *relevant* aspects." *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 732 (6th Cir. 2000) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

Recently, the Sixth Circuit has cautioned that the standard for similarly situated employees should not be construed narrowly. *See Jackson v. Fedex Corporate Services, Inc.*, --- F.3d ----, 2008 WL 596534 at *8 (6th Cir. Mar. 6, 2008) ("The purpose of Title VII and Section 1981 are not served by an overly narrow application of the similarly situated standard.").

8

Instead, the "appropriate test is to look at those factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects." *Id*. at *6 (quoting *Ercegovitch*, 154 F.3d 344, 353 (6th Cir. 1998)). The Sixth Circuit has eschewed a cookie-cutter approach to the issue of relevance, holding that "[c]ourts should not assume . . . that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id*. at *5 (quoting *Ercegovitch*, 154 F.3d at 352).

Accordingly, the court is tasked with identifying which factors are relevant to the factual context of the case in question or, put another way, whether the ways in which the plaintiff and the identified employees differ are irrelevant. *Ercegovitch*, 154 F.3d at 353 (holding that the district court committed error when it "did not address the relevancy of these factors to the plaintiff's claim that Goodyear denied him the opportunity to transfer to open positions within the company on the basis of age"). Specifically, the Sixth Circuit has "disapproved of a rigid standard of similarly situated that only [takes] account of job functions," because such a standard "removes from the protective reach of the antidiscrimination laws employees occupying 'unique' positions," except where the plaintiff can show direct evidence of discrimination. *Jackson*, 2008 WL 596534 at *6 (citing *Ercegovitch*, 154 F.3d at 353). The district court must address relevance with each new case.

The parties have identified several bases for comparison. Accordingly, the court will first address those bases for comparison and, next, will determine which of the similarities and differences identified by the parties are relevant to the case at hand. Only after analyzing the

9

relevance of those similarities and differences can the court determine whether the plaintiff has satisfied the fourth prong of his *prima facie* case.

### 1.     Matthew Rice

Matthew Rice, a Caucasian male, worked with the plaintiff at the Mt. Juliet store in a similar, though not identical, position.[2]  The plaintiff and Mr. Rice each were zone managers for different areas of the store, which positions involved managing a staff of employees involved with sales.  The similarity between the two positions is highlighted by the fact that, according to the defendant's Leader's Guide, it was the incumbents in the DTZM and HEZM positions that were to be considered for the Customer Experience Manager position.  In light of the fact that the plaintiff was the only DTZM at the Mt. Juliet store, he would be "effectively removed . . . from the protective reach of the antidiscrimination laws" if the court were to require a "similarly situated" employee to hold the exact position that he held.  *Jackson*, 2008 WL 596534 at *8 (citing *Ercegovitch*, 154 F.3d at 353).

The fact that Mr. Rice and the plaintiff worked at the same store, in similar positions that, according to the defendant's own manual, corresponded to the newly created position for which they both were considered, is extremely relevant.  When determining whether a decision to hire one employee rather than another was racially motivated, it is necessary to control for all other variables, to the degree that it is possible.  This is the underlying purpose of the "similarly situated" requirement.  Where lots of other variables exist, it is impossible—absent direct evidence of discrimination—to say that the decision was racially motivated.  Accordingly,

---

[2]Larrick Doak, who was selected for the Customer Experience Manager position at the Cool Springs store, cannot be identified as "a comparable non-protected person" who was treated better because he, like the plaintiff, is African-American.

10

relevant similarities are ones that are relevant to the hiring decision itself. That the plaintiff and Mr. Rice were both zone managers was obviously relevant to the hiring decision itself—the Leader's Guide stated that it was these positions that should be considered. Similarly, that the plaintiff and Mr. Rice both worked at the Mt. Juliet store was also relevant to the hiring decision itself. First, their experience with the store would count favorably towards both of them in ascertaining who should fill the new position at that store. Second, the fact that they served at the same store with the same manager makes it much easier to compare their job performances. There are simply fewer variables.

The defendant points to the fact that Mr. Rice had been employed at Best Buy for almost four years, rather than six months. However, Mr. Williams had similar working experience at Circuit City, where Ms. Cales, who later supervised both Mr. Williams and Mr. Rice at the Mt. Juliet store, had also worked. (Docket No. 39 at 1) Although Mr. Rice had worked at Best Buy for a longer period of time, Mr. Williams had worked in a management position for a longer period of time. Accordingly, the court does not find this difference to be highly relevant to the hiring decision.

Next, the defendant points to the fact that Mr. Rice had served in several different departments at Best Buy, while Mr. Williams had only worked in one department. Again, although this is a difference, it is not highly relevant to the case at hand. The court is not permitted to require each Title VII plaintiff to find a coworker with the exact same employment history as himself or herself. *See Ercegovich*, 154 F.3d at 352 ("The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated' . . . .") The fact that the plaintiff and Mr. Rice

worked in similar positions at the same store, rendering them each suited for the newly created position, suffices for the *prima facie* case.

Finally, the defendant notes that Ms. Cales ultimately concluded that Mr. Rice was the better candidate because he demonstrated superior leadership skills, while Mr. Williams was withdrawn and unassertive. The plaintiff, however, rightly asserts that these justifications are more properly analyzed under the second and third stages of analysis because "a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000); *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) ("[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case."). Accordingly, the defendant cannot successfully assert its nondiscriminatory reason for the employment action as a basis for defeating the plaintiff's *prima facie* case.

In the failure-to-hire context, this distinction is slightly muddled. Obviously, the relative merits of the candidates is somewhat at issue when determining whether they are "similarly situated." However, the Sixth Circuit has recently drawn the distinction in the following way:

> [Defendant's] argument that [plaintiff] is not similarly situated . . . is in fact the reason offered by [defendant] in arguing that [plaintiff's] termination was not a pretext for discrimination. The *prima facie* inquiry into the relevant skills and qualifications for each position by the district court was misplaced. The analysis is more appropriate to determining whether [defendant's] legitimate non-discriminatory reasons for terminating [plaintiff] was pretext for discrimination.

*Jackson*, 2008 WL 596534 at *7. Accordingly, although courts may certainly consider defendants' arguments against a finding of "similarly situated" based on plaintiffs' evidence, they may not use defendants' evidence, supporting nondiscriminatory justifications for the

12

action, as a basis for finding that the employees in question are not "similarly situated." Otherwise, district courts "would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." *Wexler*, 317 F.3d at 574.

Under this analysis, and in light of the fact that the "burden of producing a significant amount of evidence" is "not appropriate at the *prima facie* stage, but rather is better suited for the pretext stage that occurs later," *Jackson*, 2008 WL 596534 at *8, Ms. Cales' determinations regarding the relative interpersonal and leadership skills of the two candidates should not be considered at this stage. Although the defendant may certainly attempt to poke holes in the plaintiff's evidence, it is not the proper time for the defendant to assert its own evidence regarding the hiring decision. *See Cline*, 206 F.3d at 661 ("While a plaintiff may very well lose on summary judgment because she fails to proffer evidence on that 'ultimate issue,' a court misapplies the structure of McDonnell Douglas by holding that she fails at the prima facie stage due to defendant's nondiscriminatory reason."). Accordingly, the court cannot find that Ms. Cales' rankings of the candidates defeats the plaintiff's showing on the fourth prong. The plaintiff has shown that Mr. Rice was a similarly situated employee who was treated better.

### 2.    Michael Bishop

Michael Bishop, a white male, was selected to be the Store Service Manager at the Cool Springs store, a position for which the plaintiff applied and was rejected. The plaintiff has not submitted evidence indicating that Michael Bishop was similarly situated to himself. For instance, the plaintiff has not indicated in what position Michael Bishop served at the Cool Springs store—although the defendant has alleged that he was an Operations Manager, which

13

made him more suited to the Store Service Manager position—and the uncontroverted evidence is that Mr. Bishop, unlike the plaintiff, had been working at the Cool Springs Store in his prior position, where he had developed relationships with coworkers. Although courts should not assume that any one factor is determinative in this inquiry, it is nevertheless the plaintiff's burden to provide some evidence showing that an employee is similarly situated to himself. *See Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 732 (6th Cir. 2000). There is simply no evidence in the record indicating that Michael Bishop and the plaintiff were similarly situated.[3]

### 3. Philip Margarone

Philip Margarone, a white male, was selected to be the Store Service Manager at the Mt. Juliet store, a position for which the plaintiff also applied and was rejected. As with Mr. Bishop, the plaintiff has not submitted evidence indicating that Mr. Margarone was similarly situated to himself. Mr. Margarone appears to have begun his employment with the defendant as the Home Theater Product Specialist and to have been the Home Theater Area Manager when he was selected for the Store Service Manager position. (Docket No. 26 at p. 12). There is no evidence in the record indicating how Mr. Margarone and the plaintiff should be considered similarly situated, except that they each applied for the same job. Accordingly it is impossible for the court to determine in what "relevant" capacities the two men can be considered "identical." The

---

[3]In addition, were the court to find that Mr. Bishop and the plaintiff were similarly situated, the plaintiff's admission that Mr. Bishop "was selected for the SSM position primarily because of his prior management experience at the Cool Springs Store" and that Mr. Bishop "was also selected . . . because of his experience overseeing the Geek Squad" would effectively defeat any argument that those two justifications did not, in fact, motivate the decision, but were instead a pretext for discrimination. (Docket No. 39 at 13)

14

court cannot find that Mr. Margarone and the plaintiff were similarly situated.[4]

### B. The Defendant's Proffered Nondiscriminatory Reason

Once the plaintiff establishes a *prima facie* case, "the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action." *Brennan v. Tractor Supply Co.*, 237 Fed. Appx. 9, 19 (6th Cir. 2007) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981); *see also Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 165 (6th Cir. 1986). "This is a burden of production; although '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons,' it must raise 'a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Cline v. Catholic Diocese of Toledo*, 206 F.3d att 666 (quoting *Burdine*, 450 U.S. at 254). To satisfy this burden, "'the defendant must clearly set forth . . . the reasons for the plaintiff's rejection,' and that explanation 'must be legally sufficient to justify a judgment for the defendant.'" *Id*. (quoting *Burdine*, 450 U.S. at 255).

The defendant has met this burden. The defendant alleges that it did not hire Mr. Williams as Customer Experience Manager for the Mt. Juliet store because it deemed Mr. Rice to be more qualified. Specifically, Ms. Cales made this decision because Mr. Rice scored higher on the Employee Experience and Superior Customer Service areas on the defendant's evaluation sheet. Ms. Cales found that Mr. Williams needed "to build relationships with all employees in the store, not just select employees in his area" and to "[s]pend more hands on, follow up time

_____

[4]As with Mr. Bishop, the plaintiff has also foreclosed any pretext argument as to the defendant's hiring of Mr. Margarone when he admitted that Mr. Margarone "was selected for the SSM position primarily because of his previous management experience, including his experience managing Home Theater installation." (Docket No. 39 at 14)

15

with associates." (Docket No. 26 at 15) In addition, the defendant alleges that Mr. Williams had been withdrawn and unassertive at training events and that, at a job fair, Mr. Williams played a football video game when he should not have been doing so.

In contrast, the defendant alleges that Mr. Rice demonstrated superior leadership abilities, such as by constructing a training schedule for "chalk talk" meetings with his staff in the mornings and that, at the job fair, Mr. Rice spent his time recruiting and working through the application system. On the evaluation form, Ms. Cales noted that Mr. Rice "speaks to his entire team daily and has built relationships with the entire store" and that he "spends most of his day training and retraining his team." (Docket No. 26 at 5) This evidence raises a legally sufficient explanation to justify a judgment for the defendant.

### C. Evidence of Pretext

A plaintiff "can refute the legitimate nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Wexler*, 317 F.3d at 576 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). "At this final stage, '[t]he burden of producing evidence of 'pretext' essentially merges with the burden of persuasion, which always lies with the plaintiff.'" *Bender v. Hecht's Dept. Store*, 455 F.3d 612, 624 (6th Cir. 2006) (quoting *Gragg v. Somerset Technical Coll.*, 373 F.3d 763, 768 (6th Cir. 2004)); *see also Wilkins v. Eaton Corp.*, 790 F.2d 515, 522 (6th Cir. 1986).

The Sixth Circuit has indicated that, where the plaintiff has no direct evidence of discrimination, the plaintiff "must show, in essence, that [the defendant's] 'business decision

16

was so lacking in merit as to call into question its genuineness.'" *Bender*, 455 F.3d at 625 (quoting *Hartsel v. Keys*, 87 F.3d 795, 780 (6th Cir. 1996)).  Yet this is not a standard of impossibility.  *See Wexler*, 517 F.3d at 576 ("An employer's business judgment, however, is not an absolute defense to unlawful discrimination."); *E.E.O.C. v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831, 835 (6th Cir. 1997) ("Although it is true that a factfinder should refrain from probing an employer's business judgment, a decision to terminate an employee based upon unlawful considerations does not become legitimate because it can be characterized as a business decision.").

While employers are "free to choose among qualified candidates," *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987), and "[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with," *Hartsel*, 87 F.3d at 801, nevertheless, the Supreme Court has held that a comparison of the plaintiff's qualifications with those of the selected employee "may suffice, at least in some circumstances, to show pretext."  *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 455 (2006); *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 187-88 (1989) ("[A plaintiff] might seek to demonstrate that respondent's claim to have promoted a better qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position.").

Accordingly, the Sixth Circuit has held that a plaintiff may show pretext on the basis of superior qualifications in two situations.  First, "[i]n the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment."  *Bender*, 455 F.3d at 626-27.  Second, "in

17

the case in which there is little or no other probative evidence of discrimination, to survive

summary judgment the rejected applicant's qualifications must be so significantly better than the

successful applicant's qualifications that no reasonable employer would have chosen the latter

applicant over the former." *Id*. at 627; *see also Wexler* 317 F.3d at 576 ("[T]he reasonableness

of an employer's decision may be considered to the extent that such an inquiry sheds light on

whether the employer's proffered reason for the employment action was its actual motivation.").

The plaintiff has chosen to pursue the first avenue, alleging that he was better qualified

than Mr. Rice and also providing other evidence of discrimination. In support of his argument

that he was better qualified, the plaintiff has provided evidence that, unlike Mr. Rice, he has a

four-year college degree and has never received a written disciplinary notice. In addition, the

plaintiff has provided evidence that, while he was the DTZM, his "Geek Squad" unit was voted

number one in the district[5]. Although this evidence, by itself, might not be enough to satisfy the

second *Bender* route, it is enough (combined with other evidence) to satisfy the first. The

relative importance of a college degree to the position may be inferred by the job description for

"Customer Experience Manager" provided by the defendant to the EEOC[6], which required a

four-year bachelor's degree in "Business, Marketing, Stats/Math, [or] Psychology." (Docket No.

---

[5]The defendant alleges that the banner was given in error because the Mt. Juliet store, being less than 90 days old, was ineligible for banners. (Docket No 41 at 4) But "to save face" the defendant did not take the banner away. (*Id*.)

[6]The defendant admits that "the EEOC received a job description for the CEM position which included a requirement of four (4) year bachelors degree" but seems to dispute that this was ever the correct job description. (Docket No. 41 at 12) How the job description came into being remains, under the defendant's evidence, a mystery. Drawing the evidence in the light most favorable to the plaintiff, a jury could conclude that this was, at some point, the applicable job description.

18

36, Ex. 2 at p. 12-13) Similarly, the fact that Mr. Rice had received numerous citations regarding work issues, and that the plaintiff received none, could alone sway a trier of fact that the plaintiff was more qualified.

In support of "other evidence" of discrimination, the plaintiff first cites authority indicating that "'the legitimacy of the articulated reason for the employment decision is subject to particularly close scrutiny where the evaluation is subjective and the evaluators themselves are not members of the protected minority.'" *Bruhwiler v. Univ. of Tennessee*, 859 F.2d 419, 421 (6th Cir. 1988) (quoting *Grano v. Dept. of Development of City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983)). In the case at hand, the plaintiff was, in fact, rejected by use of a subjective evaluation, and the evaluator herself—as well as the committee to which she reported—was Caucasian. Accordingly, this "close scrutiny" standard would appear to apply. However, there is additional authority indicating that "there is an inference of nondiscrimination when an adverse employment decision is made by the same person who hired the plaintiff." *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996). Although it is not clear from the record who had final hiring authority, it appears that Ms. Cales recruited the plaintiff on her own impulse and had at least some input regarding that hiring decision. (*See* Docket No. 39 at 1; Docket No. 28, Ex. 2 at 4) These inferences in favor and against discrimination likely cancel each other out. Regardless, the court finds that the "other evidence" of discrimination suffices to meet the *Bender* standard.

First, the fact that the defendant appears to have had two different job descriptions is evidence in favor of discrimination. The Sixth Circuit has found that evidence of "irregularities in the process of posting the position and entertaining applications for it" can lead to the

19

conclusion that the plaintiff was denied a position due to his race. *Jenkins v. Nashville Public Radio*, 106 Fed. Appx. 991, 994 (6th Cir. 2004). The plaintiff has provided evidence for a substantial number of irregularities. First, after providing the defendant with a job description for the Customer Experience Manager position requiring a four-year bachelor's degree—a degree that the plaintiff has and Mr. Rice does not—the defendant has since provided a job description that does not require one. The existence of two conflicting job descriptions is a serious irregularity in the application process, especially where the individual who was hired would not have qualified for the position under one of those job descriptions.

Second, the fact that, although Mr. Rice had a significant number of citations, that section of his evaluation form was left blank, is a serious irregularity. As with the dueling job descriptions, it is not so much the fact of the plaintiff's greater qualifications in this regard as the irregularity in the application process.

Third, the plaintiff has alleged that, although he was promised an interview for the position, he was never given one. The Sixth Circuit has held that "[t]he lack of interview . . . is another basis for a finding of pretext." *Kline v. TVA*, 128 F.3d 337, 351 (6th Cir. 1997). Finally, there is evidence that Ms. Cales did not even know what the minimum qualifications were when she hired Mr. Rice. At her deposition, Ms. Cales was asked "did you or did you not have some understanding about some sort of minimum qualifications for the CEM position?" and Ms. Cales responded, "I did not." (Docket No. 28, Ex. 2 at 12) The fact that the person in charge of hiring alleges that she did not know what the qualifications for the job were is a significant irregularity in the hiring process. As in *Jenkins*, the plaintiff has provided significant evidence of irregularities in the hiring process, as well as evidence of allegedly superior qualifications,

20

"which, if believed by the trier of fact, could lead to the conclusion" that the defendant denied

him the Customer Experience Manager position because of his race. Although perhaps no single

piece of evidence acts to sound the alarm of a racist employment decision, the cumulative effect

of the evidence is enough to meet the plaintiff's burden. Accordingly, the court cannot grant

summary judgment in this case.

## CONCLUSION

For the reasons stated herein, the defendants' Motion for Summary Judgment will be

denied.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

21